(2 App. Div. 584.)

### HUTCHINSON v. ROOT.

(Supreme Court, Appellate Division, First Department. March 20, 1896.)

1. CONTRACTS—PAROL EVIDENCE.
   A contract by which defendant guarantied to plaintiff payment by J., as agent of H., of all sums up to $5,000 which may become due "on account of coal of the B. colliery," which may be sold to or by said agent, cannot be limited by parol to a particular kind of coal from said colliery.

2. SAME—CONSTRUCTION.
   Plaintiff made a contract with H. by which he gave her the sole agency of the sale of the output of the B. colliery, "at all points along the line of the N. R. Co., its branches and connections," and plaintiff agreed to fill all orders for coal sold by H. to any persons at such points. *Held*, that coal delivered at one of the termini of the road on coal docks leased by it and under its control was within the contract, and therefore within defendant's guaranty of payment by H. of money becoming due thereunder.

3. GUARANTY—PROOF OF AMOUNT DUE.
   Though a contract by which plaintiff undertook to fill all orders of H. for coal provided for the furnishing by plaintiff to H. of verified statements showing the amounts remaining due and unpaid for coal, still, the parties thereto having adjusted the amounts for which H. was liable thereunder, without any request for a verified statement, complaint cannot be made by defendant, in an action on defendant's guaranty of payment by H., that such a statement was not furnished.

Appeal from judgment on report of referee.

Action by Charles Hutchinson against Mary F. Root. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

George H. Adams, for appellant.
W. R. Wilder, for respondent.

RUMSEY, J. On the 15th day of October, 1891, the plaintiff entered into a contract with one Hattie P. Root, by James H. Root, her agent, by which, among other things, the plaintiff contracted to give to Mrs. Root the sole agency for the sale of the total output of the Ben Carbon Colliery, "at all points along the line of the New York, Lake Erie and Western R. R. Co., its branches and connections." The plaintiff further agreed to fill all orders for coal sold by said party of the second part or her agents to any person or persons on the line of the said New York, Lake Erie & Western Railroad, or its branches or connections, at prices stated in the

contract. The contract further provided that Mrs. Root agreèd to employ James H. Root as her agent in selling the coal, and to give to the plaintiff a written guaranty of the defendant here, in the sum of $5,000, for the faithful performance by James H. Root, "agent of said party of the second part, of her agreement above set forth." This contract was delivered on the day of its date. Two days before that time, the defendant had executed the guaranty on which this action is brought, and which is in the following words:

"In consideration of the sum of one dollar to me in hand paid and other good and valuable considerations me thereunto moving, I hereby guaranty to Charles Hutchinson, of Carbondale, Pa., the payment by James H. Root, of New York City, as agent for Hattie P. Root, of all sums up to five thousand dollars ($5,000) which may become due and owing from said Root, as agent, on account of coal of the Ben Carbon Colliery which may be sold to or by said agent."

During the months of November and December, 1891, the plaintiff delivered considerable quantities of coal to James H. Root, for a large portion of which Root failed to pay; and thereupon this action was brought upon the guaranty of the defendant. The action was tried before a referee, and judgment was directed to be entered for the plaintiff in the amount claimed. From that judgment, the defendant takes this appeal.

The serious question presented by the record in its present condition turns upon the construction to be given to the contract of guaranty upon which the action was brought. The contract was dated on the 13th of October, 1891. It was under seal, and it expressed a consideration. It did not refer to the contract between Hattie Root and the plaintiff. Indeed, it could not do so, as at the time it was executed that contract had not been made. The referee has found that this agreement of guaranty was a part of the consideration given to the plaintiff at the time of making the contract with Hattie Root, but he has not found that, at the time of the execution of this guaranty by the defendant, the provisions of the contract to be made between plaintiff and Hattie Root were made known to her, or that she had in view any particular contract, or that any special provisions should be put into the contract which she intended to guaranty. Neither does he find that this guaranty was given solely to secure the performance of the contract of October 15th, nor can there be any presumption that such was the case. The facts do not show any of the circumstances which were presented to the defendant at the time of the making of this guaranty, and for that reason it must be construed upon the words of the guaranty itself. The rule with regard to the construction of such contracts is that the court will ascertain the intention of the parties to them in the same manner as that intention is ascertained with regard to any other contract. But, when the intention of the parties is ascertained, the guarantor is entitled to have the contract thus construed strictly applied, and its meaning cannot be extended to charge him upon it. Schwartz v. Hyman, 107 N. Y. 562, 565, 14 N. E. 447; Bank v. Kaufmann, 93 N. Y. 273. Applying that rule, we must examine the guar-

anty itself, to ascertain the extent of the plaintiff's liability. When we turn to that paper, we meet with no difficulty whatever. Upon a sufficient consideration, she guaranties to Charles Hutchinson the payment by James H. Root, as agent for Hattie P. Root, for all sums, up to $5,000, which may become due and owing from the said Root as agent on account of coal of the Ben Carbon Colliery which may be sold to or by said agent. This guaranty, by its terms, is broad enough to cover any coal which may be sold by James Root or to him as agent for Hattie Root; and, if this construction be given to it, it is quite clear that no fault can be found with the conclusion reached by the referee.

But if it is to be said that the guaranty which was given was a part of the consideration of the contract between Hattie P. Root and the plaintiff, set out in the complaint, and was to be confined to coal delivered under that contract, even yet the conclusion of the referee cannot be overthrown. That contract, by its terms, gave to Hattie Root the sole agency for the sale of the total output of the plaintiff's colliery at all points along the line of the New York, Lake Erie & Western Railroad Company, its branches and connections; and by it Hutchinson agreed, in terms, to fill all orders for coal sold by or to Mrs. Root or her agents to any person upon the line of that railroad, or its branches or connections, at prices therein stated. These words are not at all ambiguous, nor do they require any construction. When it is made to appear that any particular place is upon the line of that railroad or its branches or connections, so that coal shipped upon that road may be taken by the road to that place, the coal thus shipped is within the terms of this contract. It was made to appear in the case, and was not contradicted, that not only was Weehawken one of the termini of the Erie Railroad, but that the coal docks there, upon which large quantities of this coal were delivered, were leased by and under the control of that railroad. When this appeared, it necessarily followed that the coal delivered at that place upon the order of James H. Root, as agent, was within the terms of the contract, and was protected by the guaranty.

There was no case made for the admission of parol evidence to explain these words as used in this contract, except so far as it might have been necessary to show that any given place was situated on the line of that road. Parol evidence is admissible to explain the meaning of words when the words are susceptible of two constructions, in which case evidence may be given of the facts and circumstances which surrounded the transaction, so that the court can put itself in the same position as the parties who made the contract, to enable it to ascertain the meaning intended by them. Greenl. Ev. §§ 282, 288. But that is not this case; the words used here are perfectly plain, and not ambiguous in the least. Parol evidence may also be given where the words used have technical meaning, or are terms of art. In such cases, experts are permitted to give their opinion as to the meaning of these words. Greenl. Ev. § 280. It is claimed that parol evidence was competent under this principle, and it was with that

view, no doubt, that the referee permitted it to be given. But the rule did not apply here. There were no terms of art used. The defendant proposed by his parol evidence to show, not the meaning of the words used here, but the meaning of the words "tide coal" and "line coal," which are not used in the contract. His notion was that he could give testimony by which the plain words of the contract should be limited to include only one kind of coal, and then the meaning thus limited could be explained by the evidence of experts. But he made no case for the giving of any such testimony as that. If the parties had used the words "line coal" and "tide coal" in their contract, it would, undoubtedly, have been competent to give testimony to explain the meaning of those words. But they did nothing of the sort. They used in the contract plain words, which were only susceptible of one meaning; and which certainly cannot be said to have any technical meaning anywhere. The proof offered and given on the part of the defendant here amounted to showing that, under this contract, both line and tide coal were shipped to Root, as agent; but that only line coal was intended to be included within the terms of the contract. It may be quite true, as defendant claims, that coal shipped to the terminus, at Weehawken, is tide coal, although it was conceded in the case that such coal was not necessarily tide coal; but that would not change the construction of the contract, which includes the total output of the mine and the sale of that output at all points along the line, and makes James H. Root the sole agent for the sale of such output, and by which the plaintiff agrees to fill every order for coal which is sold to any person on that line or its connections, by Hattie P. Root or her agent. Within the terms of the contract, he would clearly be obliged to fill all orders for coal shipped to Weehawken, whether it was line or tide coal; and the defendant just as clearly guaranties payment for one kind of coal as the other, provided, only, it was shipped on this railroad or its connections. The stipulations at folio 218 of the case and schedules attached show that coal shipped to Weehawken was shipped upon the order of J. H. Root, as agent; and that stipulation includes all the coal which was recovered for in this action. Whichever construction may be given to this guaranty, whether it be broadly construed according to its terms, or whether those terms be limited by reference to the contract between Hattie Root and the plaintiff, the defendant is clearly liable for the coal which was sold under the proofs here, and for which she was charged.

It is complained by the defendant that no verified statements of the amount of coal sold to Root, as agent, were furnished to show the amounts remaining due and unpaid for coal. But that fact is of no importance here. Such statements were not to be furnished to her, and the provision was clearly one with which the guarantor had nothing to do. There is no dispute with regard to the amount of coal sold. She herself stipulated it in this action, and it appears, and is not disputed, that the parties to the original contract adjusted the amounts sold and the amounts in which Root was liable as agent, without any request for a verified statement.

This provision of the contract was therefore waived by the parties to it, as it might have been; and the fact that they were not delivered cannot be insisted upon by the defendant here.

We have examined the various exceptions taken by the defendant to the rulings of the referee. While some of the evidence might very properly have been admitted in view of the claims which were presented upon the trial, yet the evidence, if given, could not have affected the result in the view which we take of the construction of this guaranty. For that reason, none of these exceptions call for reversal of this judgment.

Our conclusion is that the judgment must be affirmed, with costs. All concur.