## TRENTON TERRA COTTA CO. v. CLAY SHINGLE CO.

(Circuit Court, D. New Jersey. April 20, 1897.)

**1. REFORMATION OF CONTRACTS—MISTAKE.**

A clerical mistake by one party in reducing the terms agreed upon to writing, which is either shared in or known to be a mistake by the other party at the time of executing the contract, is sufficient ground for decreeing a reformation.

**2. SAME.**

The owner of a patent for clay shingles proposed in writing to give to a manufacturer a license for certain states, and, among other provisions, stipulated that the licensee was to pay royalties upon at least 3,000 squares of the patented shingles each year. After some negotiations, resulting in modifications of other provisions, but without any objection by either party to this stipulation, the licensee by letter authorized the licensor to draw up a contract on the basis of the terms agreed· upon. These terms were set forth in the letter, but with a statement that royalties were to be paid, in any event, on 30,000 squares per annum, instead of 3,000. *Held*, on the evidence, that this was a clerical error known to be such by the licensor at the time of executing the contract, and that a reformation should therefore be decreed.

Geo. W. Macpherson and John T. Bird, for complainants.
Linton Satterthwait, for defendants.

KIRKPATRICK, District Judge. This bill is filed to reform a contract entered into between the Trenton Terra Cotta Company, the complainants herein, and the Clay Shingle Company, the defendants, bearing date January 29, 1892. It appears from the evidence in the cause that the defendants, residents of the state of Indiana, were the owners of a patent for the manufacture of clay shingles, and were desirous of having their shingles manufactured and sold on royalty in the Eastern markets. To that end they entered into negotiations with the Trenton Terra Cotta Company, who owned a large plant in Trenton, N. J., suitable for the purpose, and some time in the latter part of the year 1891 submitted a form of agreement, in which it was, among other things, provided that the Clay Shingle Company should give the Trenton Terra Cotta Company the right to manufacture their patented tile at Trenton, N. J., and the exclusive right to sell and use the same in the states of New Jersey and Delaware, and the right to sell and use (not exclusive) in the state of New York; the Trenton Company to pay $2,000 as an advance on the royalty when the papers were executed. For this advance no condition was imposed as to the amount of tile to be made in 1892, but during every year after 1892 the said Trenton Company was to be required to make not less than 3,000 squares, or pay the royalty on that amount. The said proposed agreement also provided that the price of the tile sold by the Trenton Company should not be less than $6.50 per square delivered upon the cars or wagons at their factory, and that there should be paid the Clay Shingle Company a royalty of 50 cents per square for each 100 square feet of tiles made at their factory, and sold within the allotted territory. This proposition, as a whole, was not satisfactory to the Trenton Company. In a

letter dated December 30, 1891, they stated their objections to be the payment of $2,000 for advance royalties, the time when the payment of royalties should begin, and their failure to obtain the exclusive right of sale in the state of New York as well as in the states of New Jersey and Delaware. In this same letter they returned to the Clay Shingle Company the copy of the proposed agreement which had been submitted to them. On January 1, 1892, the Clay Shingle Company, replying to the letter of the Trenton Company of December 30, 1891, receded from their demand for the $2,000 for advance royalties. They say they do not care about the Trenton Company binding themselves to a fixed royalty inside of two years, provided they will agree to make all the tiles necessary to supply the demand, and use business facilities to create a demand; and they have no objection to giving the exclusive right to sell and use in New York, as well as in New Jersey and Delaware, if they (the Trenton Company) would supply the demand. In fact, they would be glad to have the Trenton Company take all the New England states as well upon the same terms. Nothing was said in this correspondence by either of the parties as to the other terms of the proposed contract except that Mr. Elder, speaking for the Clay Shingle Company, says:

"If I had about two hours talk with you, I think I could convince you that there is nothing in the agreement but what is just and right, giving you ample rights in the manufacture and sale of tile, and guarding our interests in a way that is right and proper."

Up to this point in the negotiations it will be observed that no suggestion had been made that the number of squares which the Trenton Company should manufacture each year or pay the royalty upon should exceed the 3,000 squares provided for in the original proposition, either by the Trenton Company as an inducement that the modification of the agreement insisted upon by them should be granted, or by the Clay Shingle Company as a consideration for enlarging the concessions of their grant. On the contrary, the terms of the contract seem to have been satisfactory to both parties except as to the disputed matters above referred to. On January 13, 1892, the Trenton Company wrote to the Clay Shingle Company:

"Draw up your lease, leaving out the advance royalty, and make no restrictions as to amount of shingles we must make during '92 & '93. After '93 you can make it 30,000 squares, and give us the exclusive right, as I stated in my first letter, for N. Y., N. J., & Del. The clause binding us not to manufacture other shingles we will concede to now."

This letter deals with all the disputed questions, and settles them, and, in addition, changes the minimum quantity to be paid for in each year from 3,000 squares to 30,000 squares, thereby raising the amount to be paid annually from $1,500 to $15,000. The complainants charge in their bill that this was the result of a mistake, and it is this mistake they ask to have rectified by the court, so that the contract may conform to the intention of the parties.

When an instrument is drawn which is intended to carry into effect an agreement previously entered into, but which by mis-

take does not fulfill that intention, equity will correct the mistake. Wintermute v. Snyder, 3 N. J. Eq. 489. A careful consideration of the evidence leads me to the conclusion that the offer of the Trenton Company in the letter of January 13, 1892, to pay each year after 1893 a royalty on 30,000 squares was the result of a clerical error or mistake on the part of the Trenton Company, either shared in by the Clay Shingle Company, or known to be a mistake by the Clay Shingle Company at the time it executed the agreement. If that be so, the contract should be reformed in that respect. Kerr, Fraud & M. (2d Ed.) 498. I cannot believe that the Trenton Company, having refused to accept a license from the Clay Shingle Company for the manufacture and sale of tile because required to pay the small sum of $2,000 for advance royalties, and be bound to pay royalties on a minimum of 3,000 squares per annum, should voluntarily and without solicitation have agreed to bind themselves to pay royalty on ten times the amount of tile which the patentee had asked for. Nor can I conceive it possible, in the light of the correspondence, that the Clay Shingle Company could have expected them to do so; the advantages to be derived by the Trenton Company from the change of terms in regard to the payment of advance royalties, the deferred time when payment should begin on minimum amount sold, and the extension of exclusive territory not being at all commensurate with the obligation to pay $15,000 a year instead of $1,500. It is now contended on the part of the Clay Shingle Company that the extension of the exclusive privilege to sell in New York was sufficient inducement for the increased minimum output, but a perusal of the letter of January 1, 1892, will show the small value then put upon that concession by the Clay Shingle Company. It was surrendered willingly, and apparently the Clay Shingle Company would have been glad to have the rights to New England go with it; the sole condition being that the Trenton Company would make all the tile necessary to fill the orders. It cannot be questioned that, if the letter of January 13, 1892, had been silent in regard to the minimum number of squares to be paid for in each year beginning January, 1894, that 3,000 would have been the number inserted in that clause of the contract, because up to that time no other number had been mentioned. It was the number in the minds of both the contracting parties. It was one of the provisions of the contract about which no question or objection had been raised. When the disputed matters had been agreed upon, it was just as natural that the clause in the original contract in relation to the 3,000 squares as the number to be paid for each year should be inserted in the agreement as it was that the clause in relation to the price at which the tile must be sold by the Trenton Company should remain. We must assume that, in the absence of any reason for a change in the minds of the parties, they had no intention to make one, and that, if the contract now calls for the yearly payment on 30,000 squares instead of 3,000 squares, it was the result of a mistake which was mutual, in that it was not in the contemplation of either party at the time the agreement was signed. For a mutual mistake, shared

in by both parties, equity will afford relief. Paget v. Marshall, 28 Ch. Div. 255. Courts of equity will relieve against mistakes, and will correct and reform deeds and instruments of the most solemn character to grant such relief. 1 Story, Eq. Jur. § 152. The only conditions ·to granting such relief are that the mistake must be mutual, and clearly proved. It seems to me that no one can read the history of this negotiation and the correspondence between the parties without coming to the conclusion that 3,000 squares was the number which both parties intended to insert in the contract, and that the insertion of the larger number was the result of a mutual mistake or a mistake on the part of the Trenton Company, known to be such by the Clay Shingle Company at the time the contract was executed. The complainants are entitled to the relief prayed for, and decree should be entered accordingly.