### CHICAGO & A. RY. CO. v. GREEN.

(Circuit Court, C. D. Missouri, W. D. January, 1902.)

No. 2,250.

**1. REFORMATION OF INSTRUMENTS—GROUNDS FOR RELIEF—MISTAKE.**

A court of equity has jurisdiction to reform a release in which, through a mutual mistake, the name of the party paying the consideration was erroneously stated, and by inserting therein a part of the consideration which in fact entered into the settlement, whether the same was omitted through mistake of fact or of law.

**2. SETTLEMENT—VALIDITY—IMPEACHMENT FOR FRAUD OR INCAPACITY.**

A settlement of a disputed claim against a railroad company for a personal injury should be sustained where fairly made, and evidence of fraud or incapacity to impeach such settlement should be clear and persuasive. A court is not justified in setting it aside because of an impression that the amount paid was inadequate.

**2. SAME—EVIDENCE TO IMPEACH.**
Defendant was injured by the breaking of his leg while in the service of complainant railroad company. Three days afterward an agent of complainant, after investigating the accident, visited defendant, and in the presence of others, some of whom were friends of defendant, a settlement was made, and a release was signed by defendant of all claims against the company on account of the injury, in consideration of the payment to him by the agent of $50. After the release had been signed and handed to the agent, he further agreed to pay the bill of defendant's physician, and thereafter read the release to defendant, to which the latter made no further objection. There was no evidence of any fraud or misrepresentation on the part of the agent, but it fairly appeared that he was justified in believing, and did believe, from statements made to him by others, that the company was under no legal liability for the injury, and the weight of the evidence tended to show that defendant was in a condition to fully understand the transaction and the purport of the release. *Held*, that no ground was shown which would justify a court of equity in setting it aside.

In Equity. Suit for reformation of release.

The defendant, Squire L. Green, brought an action against the Chicago & Alton Railroad Company in the state court to recover damages for personal injuries. The cause was removed into this court, whereupon the complainant, the Chicago & Alton Railway Company, presented its bill in equity, in the nature of a cross action, against said Squire L. Green, alleging that the defendant at the time of the injury was an employé of the Chicago & Alton Railway Company, and that any cause of action which he had was against the latter company. The bill further alleges that, after said injury, said defendant,—for a valuable consideration to him paid by the complainant shortly after the injury,—in writing, executed a release to said company for any and all liability resulting therefrom; that by the mutual mistake of the parties the said release was executed to the Chicago & Alton Railroad Company, instead of to the complainant, the Chicago & Alton Railway Company. and that, as a further consideration for the execution of said release, the complainant assumed the payment of the services of the physician and surgeon who attended upon the defendant; and that this consideration, through a misapprehension of the parties as to the necessity of incorporating it into the release, was omitted therefrom. The bill prays for a reformation of the said release to make it conform to the facts of the case. The further facts sufficiently appear in the following opinion of the court:

Lathrop, Morrow, Fox & Moore, for complainant.
E. W. Henry, for defendant.

PHILIPS, District Judge (after stating the facts). That there was a mistake in the written release executed by the defendant, in inserting therein the "Chicago & Alton Railroad Company" instead of the "Chicago & Alton Railway Company," was not contested by defendant's counsel at the hearing; and, if it had been, the evidence is clear that it was a mistake of both parties. It is the special province of a court of equity to rectify such mistakes. "If, by inadvertence, accident, or mistake, the terms of a contract were not fully set forth in the policy, the plaintiff is entitled to have it reformed so as to express the real agreement, without the necessity of resorting to extrinsic proof." Thompson v. Insurance Co., 136 U. S. 296, 10 Sup. Ct. 1019, 34 L. Ed. 408. See, also, Snell v. Insurance Co., 98 U. S. 88, 25 L. Ed. 52; Trenton Terra Cotta Co. v. Clay Shingle Co. (C. C.) 80 Fed. 46. This is equally true where the failure to express in the written instrument "resulted from a mistake as to the legal meaning

and operation of the terms and language in the writing." Corrigan v. Tiernay, 100 Mo. 281, 13 S. W. 401. So, in Parlin v. Stone (C. C.) 48 Fed. 808, Judge McCrary, on this circuit, said: "When the mortgage shows on its face that the consideration moved from a certain person, and it appears that his name as mortgagee was omitted by mistake, equity will reform the instrument by inserting his name."

The fact that a check was given, instead of money, can make no difference. The giving of the check evidenced the purpose on the part of the agent of the railway company to extinguish the debt; and, when the defendant accepted it without the objection that it was not money, he also evidenced the fact that he received it as payment. This was emphasized by the statement made at the time by the agent, Anderson, to the defendant, that he could cash it by presenting it to the agent of the complainant.

The same rule respecting the province of a court of equity to correct mistakes is laid down by Bispham in his work on the Principles of Equity (4th Ed.) § 185, as follows:

"A mistake exists when a person, under some erroneous conviction of law or fact, does or omits to do some act, which, but for the erroneous conviction, he would not have done or omitted."

And this principle has application to the omission to write into the release the additional consideration of the undertaking that the railway company would assume the payment of the doctor's bill. Thus, Mr. Bispham, at section 190, says that:

"Where there was an agreement that part of the purchase money of certain real estate should be paid by a judgment note for a certain sum, 'with interest,' and the words 'with interest' were omitted from the note by the mistake of the scrivener by whom it was written, it was held that this was such a mistake as equity would correct."

And if in fact this additional consideration to pay the doctor's bill entered into the contract of settlement, and was not inserted in the release, either from inadvertence, or misconception of the law as to the necessity of inserting it in the instrument to make it operative as a release, such fact does not deny to complainant the assistance of a court of equity to reform it in this respect. As said by the supreme court of this state in Corrigan v. Tiernay, supra:

"In such cases equity will reform the contract, and this, too, though the instrument fails to express the contract which the parties made, by reason of the mistake of law. Says Pomeroy, 'In short, if a written instrument fails to express the intention which the parties had in making the contract which it purports to contain, equity will grant its relief, affirmative or defensive, although the failure may have resulted from a mistake as to the legal meaning and operation of the terms or language employed in the writing.'"

Neither can importance attach to the contention of defendant's counsel that the promise to pay the doctor's bill in addition to the $50 was made after the defendant signed the release and handed it to Anderson, or whether the promise was made contemporaneously (as testified by complainant's witnesses) with the act of handing the release by defendant to Anderson. The defendant's testimony is that when he had signed the release, and Anderson took it, the latter said to him it was his duty to read it to him. If so, the transaction was

yet in fieri until this duty was performed. And as soon as it was read over to him, and he fully realized that its effect was a complete settlement of any claim he might have for damages, he said, "This will not more than pay my doctor's bill," or words to that effect; and thereupon the additional promise was made to pay the doctor's bill. Whether or not the defendant then said "Well," his silence gave consent, accentuated by no further objection, and acquiescing in Anderson taking away the release, while the defendant retained the check. It was a part of the res gestæ, and the whole transaction was a unit. Defendant's witnesses claim that the additional promise of Anderson was that the railway company would "pay for the first aid," which, as I gather from the incidents of the case, meant the doctor's service for setting the leg; but, as complainant's witnesses testified it included the whole of the doctor's bill up to the settlement, the defendant cannot complain if the court reforms the instrument to include the larger obligation on the part of the complainant.

Defendant's contention at the hearing was confined to two propositions: First, that Anderson obtained defendant's signature through deception and fraud; and, second, that defendant was so far non compos as not to fully comprehend his acts.

It should be the inclination of every court to closely scan and scrutinize such settlements, to see that they are absolutely free from deception and imposition. The injury in question occurred on the 21st day of the month, and Anderson, the railroad's agent, came on the 24th day of the month to investigate it. I am unable to discover any artifice or deception employed by Anderson to justify the judicial mind in denouncing his conduct as fraudulent and wrongful. In the first place, on his arrival at the place of the accident he instituted inquiry among the colaborers of the defendant present at the injury to learn the particulars thereof, and obtained their statements, which are filed with the depositions herein, which showed that the accident resulted from an unforeseen cause in tearing down or removing portions of a bridge, under circumstances both of contributory negligence on the part of the defendant, or where the danger resulted in the progress of the work of tearing down, where the conditions were constantly changing, and in the absence of the overseer, and which, under the ruling of the court of appeals of this circuit in Gold Mines v. Hopkins (recently decided) 111 Fed. 298, presented the state of case where a servant undoubtedly assumes the risk of the place and conditions under which he works. While the merits of the defendant's claim for damages are not on trial in this case, it was competent for the complainant to show this information thus obtained, as evidence of its good faith and motive in proffering the settlement proposed at $50; believing, as the testimony of complainant shows, that there was no actual liability on the part of the railway company. It is true that Anderson took with him when he called to see the defendant an employé of the complainant, to show him where to find the defendant. He held no secret interview with him. On the contrary, the whole interview was in the open, in the presence of the defendant's son, a man of mature years, and defendant's friend, whose hospitality and nursing he was receiving. It is not important to find what were the precise

words used by Anderson when he opened the conversation with the defendant, as there is no ground for question that the defendant under-stood that Anderson was there as the representative of the railway company, and that what he was doing was in the interest of the company.

The only pretense based upon the defendant's evidence for any arti-fice practiced by Anderson is that, when he handed the defendant the release in duplicate to sign, they were folded up. If they were folded when handed to the defendant, there was nothing whatever to prevent him from unfolding a loose paper before signing it, and there is noth-ing to indicate that there was any design in this incident. The excuse given by the defendant for not reading it himself is that he could not read without his eyeglasses. This is without force, for the reason that he stated that his eyeglasses were then in the room, and he could have had them for the asking. There was nothing done or said by anyone to prevent him. He did not even suggest the want of his glasses. It is the well-settled rule in this state that if a person so signing such a paper, having the opportunity and ability, neglects to read all of the receipt releasing the company from any and all claims on account of and arising from injuries received by him while in the service of the company, and signs the same, he will not afterwards be heard to say that he did not read it. Mateer v. Railway Co., 105 Mo. 320, 16 S. W. 839. The court further said:

"He could read it. No one connected with the company had made any statement to him of what it contained. He was told to sign it. It was his duty to read it before signing it, and he will not now be heard to say that he did not, when every opportunity was afforded him to do so. To permit such a rule would unsettle the business affairs of this country."

So the court of appeals of this circuit, in Insurance Co. v. McMaster, 87 Fed. 63, 30 C. C. A. 532, said:

"If one can read his contract, his failure to do so is such gross negligence that it conclusively estops him from denying knowledge of its contents, un-less he was dissuaded from reading it by some trick, artifice, or fraud of the other party to the agreement."

And what is still more conclusive on the defendant is the admitted fact that, just after he did sign it, Anderson said to him, in substance, that it was his duty to read the paper to the defendant, and he did thereupon read it to him. So that as a matter of fact the defendant was fully advised at the time of the nature and effect of the instrument he signed,—as much so as if he had read it over himself. The incident further demonstrates the fact that Anderson, in saying that it was his duty to read the paper to the defendant, recognized that he did not re-gard the transaction as closed by the mere act of obtaining the defend-ant's signature.

The only remaining question for consideration is, did the defendant understand what he was doing? Reliance is placed by the defendant upon the testimony of Dr. Pritchett, who attended upon the defendant as his physician, and expresses the opinion that the defendant's mind at the time was not normal, and hardly in condition to fully compre-hend his act. Although Pritchett was the local surgeon of the rail-way company, in attending upon the defendant at his instance he

was defendant's physician. He did not even see the defendant that day. He had not prescribed an opiate for him for a day or two previous, and it is exceedingly doubtful if one had been administered within the preceding 12 hours. That the defendant understood full well what he was doing, the moment the release was read to him, he comprehended that he had, for $50, conceded away any further claim against the company, by saying that the sum would not pay his doctor's bill. And when Anderson, in reply, said to him, "We will pay for that," he was satisfied, and acquiesced, by making no further objection. And his own son, and the party with whom the defendant was staying in his tent, both testified that all understood that it was a full settlement. The defendant further heard Anderson then say to the man waiting on defendant, "Send in your time for payment for your attendance up to this time, and hereafter you must look to [the defendant]," or words to that effect. The naked statement of the doctor, who had not seen him that day, and whose opinion was necessarily more or less speculative, ought not to prevail over the substantially established fact that the defendant did intelligently and fully comprehend what he was doing, and the effect of the release.

Since this cause was submitted to the court, defendant's counsel invites attention to the ruling in Wilcox v. Railway Company (C. C.) 111 Fed. 435. The substantive effect of that decision is that where an injured party was induced to make a settlement and give a release under the impression, created by the agent of the railroad company and the attending surgeon, that her injuries were not of a permanent character, and that, in the opinion of the physician, she would fully recover within one year, and thereupon the settlement was based upon an estimate of the value of one year's services, if it turned out afterwards that she did not fully recover within the year, and that her injuries were permanent, the release should be set aside, notwithstanding it was expressly found that the evidence failed to show "fraud or wrongdoing" on the part of the company's agent or the surgeon. This ruling is not in harmony with that of the supreme court of this state in Homuth v. Railway Co., 129 Mo. 629, 31 S. W. 903. In that case, as the syllabus recites, "defendant's physician called to see her, and, in answer to a question as to her condition, stated that she would be well within fourteen days. Her own physician, who was present at the time, expressed a similar opinion. A settlement was effected and a release executed on the basis of a recovery by the time stated by defendant's physician. Plaintiff did not recover for several weeks thereafter. Held, the evidence did not sustain the charge of fraud in obtaining the release, and the trial court should have directed a verdict for defendant." See, also, Railway Co. v. Bennett (Kan.) 66 Pac. 1018. But conceding, for the purposes of this case, the correctness of the ruling in Wilcox v. Railway Co., supra, the facts which influenced the conclusion of the court there are not present in the case at bar. There were no representations of a similar character whatever made by the complainant's agent to the defendant. The defendant's leg was broken, and had been set, and there was no representation made or opinion expressed as to the length of time of recovery, and no indication of any serious complication resulting therefrom. As was said by

the supreme court of this state in Mateer v. Railway Co., 105 Mo. 354, 16 S. W. 839:

"The law favors the compromise and settlement of disputed claims. If these settlements, fairly made and entered into, are to be disturbed upon frivolous grounds, it will often deter these companies from doing justice to their employés who have received injuries, for fear of future litigation. A wise policy would dictate that they be encouraged to do justice in these cases outside of the courts, and that their settlements should be sustained when they are just and fair."

And I may add that, if such settlements are to be disturbed because of the impression the judge may entertain that the amount of compensation was inadequate, it would establish a most uncertain and dangerous rule of law. If the employer, believing from the facts in his possession that there was no legal liability for the injury sustained by his employé, nevertheless recognizes a moral obligation to contribute aid of a substantial character to the unfortunate, under the circumstances surrounding his situation at the time, and the employé is willing to accept it, before a court takes upon itself the function of undoing such settlements the evidence of fraud or incapacity ought to be made clear and persuasive.

Decree for complainant as prayed.