### PRUDENTIAL CASUALTY CO. v. MILLER.

(Circuit Court of Appeals, Sixth Circuit. January 7, 1919.)

No. 3103.

1. REFORMATION OF INSTRUMENTS ⟨⇨30—BURGLARY POLICY—EQUITABLE CAUSE OF ACTION.

If the agent of a burglary insurer and the insured storekeeper or his agent so misunderstood each other that their minds never met as regards the extent of the store's burglary alarm equipment, or if agent of insurer through mistake or designedly misinformed insurer as to extent of such equipment, or undertook without authority to waive failure of the storekeeper to connect his safe with a burglary alarm system, correction of the policy as issued cannot be obtained at law, but must be sought in equity, after which the actual contract as then determined can be enforced.

2. INSURANCE ⟨⇨143(3)—BURGLARY INSURANCE—ACTION IN DISREGARD OF PROVISION.

The holder of burglary insurance cannot accept his policy without reading it, and in an action at law on the instrument, after a loss, ignore one of its provisions and have it enforced otherwise than according to its terms; his remedy, if any, being by reformation in equity.

---

⟨⇨For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Action ⬮⬮68—Stay of Action at Law Pending Suit in Equity.**

When it is discovered, after an action at law is brought on a policy of insurance, that a reformation is necessary, for which a bill in equity must be filed, the action at law will be held in abeyance until the case in equity is concluded.

In Error to the District Court of the United States for the Southern Division of the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Action by Gilbert E. Miller against the Prudential Casualty Company. To review judgment for plaintiff, defendant brings error. Reversed.

Wilson W. Mills, of Detroit, Mich., for plaintiff in error.
James O. Murfin, of Detroit, Mich., for defendant in error.

Before WARRINGTON and KNAPPEN, Circuit Judges, and SATER, District Judge.

SATER, District Judge. On October 2, 1915, Miller made a contract with a still alarm company for the equipment of the doors, windows, and transoms of (but not of the safe in) one of his Detroit jewelry stores with a burglar alarm system. He then held an unexpired policy issued by the insurance company, insuring him for $5,000 against loss by burglary. While the work of installation was in progress, Allen, who, notwithstanding his rather uncertain evidence as to his status with the insurance company, must be regarded as its accredited representative, met Guerin, who was Miller's financial man and business manager, at which time Guerin, so he states, exhibited to Allen the executed contract between Miller and the still alarm company. Allen claims he was shown merely an unsigned memorandum. The instrument produced was examined by Allen, and a discussion took place as to most of its details. Guerin took him over the premises, and explained to him quite fully of what the equipment would consist. The evidence is not entirely clear as to whether there was any mention of, or discussion between them relating to, the protection of the safe located in the rear of the store, but there is no pretense that Guerin represented that the still alarm system was to extend to the safe. Allen suggested, what was previously unknown to Miller and Guerin, that, on account of the improvement then being made, Miller would be entitled to a rebate on the premium previously paid for his insurance policy. He claims to have discussed the matter of the store's equipment several times from early September until some time in October, with both Miller and Guerin, and that on one occasion, when the latter was absent, he was informed by Miller that a complete system of protection including a wooden casing around the safe with connections with the outside central alarm system was intended. Miller did not testify, being "somewhere between Jacksonville and Washington" at the time of the trial.

The still alarm company completed its contract for work at the store about November 1, notice of which was given to Allen, who,

after that date on more occasions than one, visited the store, but at no time examined or noticed the safe. He had never seen a safe inclosed by a wooden casing. On December 27, Guerin received from the insurance company in Miller's mail a rider to be attached to the insurance policy, and also a check for the rebate (which had been figured by Allen) on the premium theretofore paid. The rebate was such as would be allowed for the protection of the safe, as well as the doors, windows, and transoms, and was greater than it would have been, had it been based on the installation actually made. The check was paid, and Miller received the money. Guerin, presumably without reading such rider, placed it in the file with the policy, and neither Miller nor any of his agents knew of any claim of failure in the installation of the still alarm system until after his safe was burglarized and more than $5,000 worth of property was abstracted therefrom on the night of February 5, 1916. The rider provides that, in consideration of the return of a portion of the premium, it is agreed that Miller had installed and that his safe was protected by a still alarm system, which was connected with a wooden casing surrounding the safe and connecting with the central alarm system; that he warrants the maintenance of such system from November 1, 1915; and that nothing contained in such rider, except as therein stated, should be held to vary or waive any of the terms of the policy. One of the terms of the policy is that no agent of the insurance company has authority to change it, or waive any of its provisions, nor shall any notice to or knowledge of any agent be held to effect a waiver or change in the insurance contract or any part of it. Proofs of loss were made by Miller on a blank form furnished by Allen, were verified before him, and were submitted to the insurance company, which refused payment and denied all liability because the safe was not protected by or connected with the still alarm system.

Miller sued on the policy as originally issued. The insurance company admits its execution and delivery, and defends, in so far as its defense is meritorious, on the ground of breach of warranty in failing to install and maintain a wooden casing about the safe, with still alarm connections. At the conclusion of all the testimony the defendant, alleging the evidence showed such breach of warranty, moved for a directed verdict. The motion was overruled, and an exception was reserved to the ruling. A verdict was returned for the full amount of Miller's claim, and, following an adverse ruling on the motion for a new trial, judgment was entered thereon. Under the court's very direct instructions as to what the jury must answer as to various points involved, should the verdict be for the plaintiff, the jury necessarily found that neither Miller nor any authorized agent of his knew that the rider provided for a wooden casing around the safe, or made any misrepresentations to or deceived the insurance company relative to the equipment to be supplied, or which had been supplied, for its protection, or in any manner concealed or failed to reveal the true situation regarding it, and that the insurance company had actual knowledge that a wooden casing around the safe had not been installed. The jury manifestly repudiated Allen's evidence, not only as to his con-

versation with Miller, but also in so far as it was contradictory of that given by Guerin.

[1-3] We need not determine whether the insurance company, prior to the issuance of the rider, was misinformed by Allen as to the extent of the alarm system installed, or as to whether he undertook to waive the nonconnection of the safe with such system, or as to whether the minds of the parties in interest ever met as to the purpose to protect and the actual protection of the safe. If Allen and Miller, or his agent, so misunderstood each other that their minds never met as regards the extent of the store's equipment, or if Allen through mistake or designedly misinformed the insurance company as to its extent, or if he undertook to waive the failure to connect the safe with a burglar alarm system, and thus exceeded his power, a situation was presented which a court of law could not correct. Correction, if desired, must be obtained in a court of equity, after which the actually existing contract between the parties as thus determined can be enforced. If the insured can prove that he made a different contract from that expressed in the writing, he can, on making sufficient proof, have it reformed in equity; but he cannot accept his policy without reading it, and in an action at law upon the instrument ignore one of its provisions and have it enforced otherwise than according to its terms. A jury may not thus reform a policy by striking out one of its clauses. Lumber Underwriters v. Rife, 237 U. S. 605, 35 Sup. Ct. 717, 59 L. Ed. 1140; New York Life Ins. Co. v. McMaster, 87 Fed. 63, 30 C. C. A. 532 (C. C. A. 8); Chicago & A. Ry. Co. v. Green (C. C.) 114 Fed. 676, 678. It follows that the trial court erred in not sustaining the motion for a directed verdict. Miller, however, is not remediless; for when it is discovered after an action at law is brought on a policy of insurance that a reformation is necessary for which a bill in equity must be filed, the action at law will be held in abeyance until the case in equity is concluded. Abraham v. North German Fire Ins. Co. (C. C.) 37 Fed. 731, 3 L. R. A. 188; Simkins, Fed. Eq. Suit, 509.

Other questions discussed need not be considered. The judgment of the trial court is reversed.