### A. Q. LUNDMAN v. UNITED STATES FIDELITY & GUARANTY COMPANY.[1]

May 22, 1925.

No. 24,551.

**When reformation of policy is necessary to recover upon verbal contract of insurance.**

1. Where a verbal contract of insurance is made to take effect immediately, but to be evidenced by a policy thereafter to be issued, and a policy is issued, delivered and retained, it is presumed that the verbal contract merged in the policy.  And, if a loss not covered by the terms of the policy occurs, but is claimed so to be by the terms of the oral contract, recovery cannot be had unless the pleading and proof show plaintiff entitled to a reformation of the policy.

[1]Reported in 204 N. W. 159.

**When grant of new trial was error.**

2. In this case, where plaintiff declared upon the oral contract and expressly declined to litigate any issue for reformation of the policy delivered and retained, and which did not cover the loss, defendant was entitled to a verdict. Hence it was error to grant plaintiff a new trial, even though the verdict for defendant was influenced by an incorrect charge.

1. See Insurance, 32 C. J. p. 1129, § 233; p. 1142, § 248.
2. See Insurance, 32 C. J. p. 1142, § 248; New Trial, 29 Cyc. p. 790.

Action in the district court for Wright county upon an oral contract of insurance against loss by burglary. The case was tried before Giddings, J., and a jury which returned a verdict in favor of defendant. Defendant appealed from an order setting aside the verdict and granting a new trial. Reversed.

*Cobb, Wheelwright, Hoke & Benson* and *J. B. Faegre*, for appellant.
*George G. Schierts* and *Kueffner & Marks*, for respondent.

HOLT, J.

Appeal by defendant from the order granting plaintiff a new trial after an adverse verdict.

On January 31, 1923, an agent of defendant solicited plaintiff, who was in the jewelry business at Annandale, Minnesota, to take burglary insurance upon his goods when locked in the safe or vault in the store. Plaintiff was prevailed upon to accept such insurance to the extent of $2,000 for one year, the premium of $26.40 to be paid to the local agent at that place. No writing passed at that time, but the insurance was to be effective at once. A short time thereafter a policy was delivered. Plaintiff says he casually looked at it and placed it in the safe, but did not read it through. Later the premium was paid. About 2 o'clock in the morning of June 28, 1923, plaintiff, who lived over the store, was awakened by the door bell and on opening the street door was confronted with robbers, who forced him to open the store and safe, took the jewelry and merchandise therein of nearly $3,000 in value, and left plaintiff bound and gagged. The policy defendant delivered to plaintiff insured: For all direct loss by burglary occasioned by the felonious

abstraction from the interior of the locked safe mentioned "by any person or persons making felonious entry into such safe or vault by actual force and violence, of which force or violence there shall be visible marks made upon the exterior of such safe or vault by tools, explosives, chemicals or electricity." Of course, entry to the safe in the manner testified to by plaintiff was not covered by the policy he received.

Plaintiff ignores the policy and sues upon the oral contract of insurance made on January 31, 1923, wherein he claims the agent agreed that the insurance covered if robbers compelled the owner, or person in charge, to open the safe as well as when burglars forced the same leaving visible marks thereon. The theory of recovery is this: There was an oral contract of insurance effective when made which covered this loss, and such contract was not modified or in the least affected by the delivery of a policy not known by the assured to exclude risks covered by the oral contract. On the trial and here plaintiff plants himself solely upon the oral contract, openly announcing that he does not seek or desire a reformation of the policy. The learned trial court submitted the case to the jury upon plaintiff's theory. The verdict was for defendant and the court granted a new trial on plaintiff's motion for errors of law. It must be conceded that the court erred in the instruction that defendant's agent did not have the authority to make such a contract as plaintiff claims. But defendant contends that notwithstanding the error no new trial should be had for, upon its motion for a directed verdict when the testimony was closed, it was entitled to the verdict rendered. If that be so the verdict was right and should remain, and it was error to grant a new trial.

Contracting orally with the understanding that a subsequent written or printed version thereof will be executed or delivered, means that the parties are bound by the terms of the written or printed instrument designed to be the final consummation and accurate expression of the oral temporary agreement. In the instant case plaintiff admitted that a policy was to issue. It was issued and delivered to him within two months of January 31, 1923. He accepted and retained it. That became the sole contract between the parties.

.In the early case of Guernsey v. American Ins. Co. 17 Minn. 83 (104), it was held an action at law to recover a loss would not lie, if the policy without reformation did not warrant a recovery. But now the practice seems well established that the insured may bring an action to reform the policy and to recover on a loss under it as reformed. Spurr v. Home Ins. Co. 40 Minn. 424, 42 N. W. 206; Kelly v. Citizens Mut. Fire Assn. 96 Minn. 477, 105 N. W. 675; Mahoney v. Minn. F. Mut. Ins. Co. 136 Minn. 34, 161 N. W. 217. But where the oral contract has been superseded by a written policy, the policy cannot be ignored. And, if a recovery is sought for property covered by the policy, the pleading and proof must show a right to recover under its terms or else under terms to which the insured is entitled to have the policy reformed or corrected. Well understood rules in equity determine whether reformation may be had. The character of the proof required is also well settled. Plaintiff did not in the complaint state any facts entitling to reformation and when the testimony was closed plaintiff's counsel said: "We stand upon the oral contract made at the time. We also refuse to stand on a reformation of the contract or the policy in evidence. We do not ask for a reformation of the contract." Thereupon defendant moved for a directed verdict, which was denied. Plaintiff was then permitted to amend the reply by alleging that defendant, after the attempted delivery of the policy, became possessed of the fact that it did not express the agreement and of the facts surrounding the loss, and with knowledge thereof retained the premium and is estopped from denying liability.

With reference to the matter so alleged in the amendment to the reply, we see no estoppel. There was burglary insurance as defined in the policy, for which defendant had the right to retain a premium. The question then recurs: Was not defendant entitled to a directed verdict, because under the policy issued and accepted there was no liability and plaintiff expressly declined to avail himself of the remedy of reformation of the policy? We think it was.

. In Collins v. St. Paul F. & M. Ins. Co. 44 Minn. 440, 46 N. W. 906, the court held that, where the policy does not express the true agreement, recovery cannot be had without reformation. So in

Union Mut. Life Ins. Co. v. Mowry, 96 U. S. 544, 547, 24 L. ed. 674, it was said that all previous verbal arrangements were merged in the policy and all the engagements must be conclusively presumed to be there stated so that, if no recovery may be had thereon as it reads, none can be had unless reformation may be granted. Plaintiff testified that, when he agreed to take the insurance, the agent told him that the policy would be delivered to him by the local agent; and that in four or six weeks thereafter that agent came into the store, handed a paper to plaintiff and said "here is your insurance policy," and plaintiff then told the agent, who was the banker in the village, that he, plaintiff, would drop into the bank later and pay the premium, that the policy was left with plaintiff, who looked at the face thereof without unfolding and placed it in the safe where it remained until after the robbery. There can be no fair doubt but that both parties considered the oral contract made on January 31, 1923, was to be embodied or expressed in a policy thereafter to be issued by defendant, and which was in fact so issued and delivered to and retained by plaintiff. That must be presumed the contract whose terms may not be varied, unless reformation thereof may be had under proper pleading and proof.

In addition to the authorities cited above, we cite Prudential Casualty Co. v. Miller, 257 F. 418, 168 C. C. A. 458; Banks v. Clover Leaf Casualty Co. 207 Mo. App. 357, 233 S. W. 78; Union Cent. Life Ins. Co. v. Hook, 62 Oh. St. 257, 55 N. E. 906.

This court, however, does not go to the extent of the Federal court, viz., that failure to read the policy bars reformation, for in Norman v. Kelso, F. M. F. Ins. Co. 114 Minn. 49, 130 N. W. 13, and Haley v. Sharon Township Ins. Co. 147 Minn. 190, 179 N. W. 895, the common practice of the insured not to read the many terms and conditions, some applicable and many more without application to the particular risk covered in the lengthy policies, is taken into consideration.

Respondent relies on McMaster v. N. Y. Life Ins. Co. 183 U. S. 25, 35, 22 Sup. Ct. 10, 46 L. ed. 64; Hay v. Star Fire Ins. Co. 77 N. Y. 235; and Bostwick v. Mutual Life Ins. Co. 116 Wis. 392, 89 N. W. 538, 92 N. W. 246, 67 L. R. A. 705, but in our opinion none

helps him. The McMaster case was this: The application was in writing, dated December 12, 1893, and contained the provision that the policy issued pursuant thereto should not be in force, "until the actual payment to and acceptance of the premium by" the company. For purposes of his own the agent, unbeknown to the insurer, interlined in the application a request to date the policy as of the date of the application. The policy was, however, dated December 18. but provided for the payment of a premium on the twelfth day of December annually in advance. A statute of the state gave a month's grace upon policies that had been in force for more than one year. The insurer died January 18, 1895. The policy was delivered December 26, 1893, and the premium then paid, the agent assuring the insured that the payment kept the insurance for 13 months. The policy was put away without being read. The court held that the premium paid kept the policy alive until the death occurred, even though the second year's premium had not been paid on December 12, when it was due. It is clear the question was one of forfeiture, but the court ruled that the premium, being payable in advance, protection was paid for one year after the date of the policy, and the statute added thereto a month of grace within which there could be no forfeiture. There was no attempt to ignore the policy. The case from New York is in line with our rule that there may be a reformation, even though the policy has been retained for some time, if the insured did not know that in reducing it to writing the insurer by mistake or fraud had varied it from the contract agreed on. It was an action for reformation. And such was the case from Wisconsin, where that court, having first held that failure to read the policy when received barred reformation, on rehearing receded from that position.

We think defendant entitled to the verdict rendered, and the order granting plaintiff a new trial is reversed.