# ANCHOR CASUALTY COMPANY v. BIRD ISLAND PRODUCE, INC., AND OTHERS. JOE GINSBURG AND OTHERS, RESPONDENTS.

82 N. W. (2d) 48.

March 1, 1957—No. 36,857.

*Daniel F. Foley,* for appellant.

*Rosenbloom & Rosenbloom,* for respondents Schouten and Tabor.

*Lauerman & Johnson,* for respondent Ginsburg.

MURPHY, JUDGE.

This action was brought by Anchor Casualty Company against Bird Island Produce, Inc., and the four officers thereof as individuals. Three of them, Joe Ginsburg, Jim Tabor, and Neil Schouten, appeared as parties of record. Apparently service was not had on the fourth. When Bird Island Produce, Inc., was organized in 1953, Anchor Casualty Company issued a bond to the corporation, as principal, under which Anchor Casualty Company became obligated, as surety, in the amount of $20,000. The purpose of the bond was to protect creditors of the produce corporation. It named the State of

Minnesota as obligee, as was required under M. S. A. 27.04 as a prerequisite to obtaining a wholesale produce license.

In June 1954, unpaid claims of creditors equalling $4,317.75 were adjudged valid against the produce corporation by the commissioner of agriculture. Anchor Casualty paid $3,291 of these claims. The remaining $1,026.75 represented amounts which the produce corporation owed to other businesses owned by three of the defendants, Ginsburg, Tabor, and Schouten. Anchor Casualty brought this action to require the four defendants individually to indemnify it for the amounts it paid pursuant to the corporate bond. The complaint demanded payment of the full $4,317.75. The defendants Ginsburg, Tabor, and Schouten counterclaimed for $1,026.75, the amount which Bird Island Produce, Inc., owed to them as individual creditors and which Anchor Casualty refused to pay. The replies of the plaintiff admitted that this amount had not been paid and that it was erroneously included in the $4,317.75 asked in the complaint.

At trial, the plaintiff attempted to introduce into evidence "APPLICATION FOR BOND" forms signed by the individual defendants by using oral testimony to explain the circumstances surrounding the signing of the application and to provide foundation.

The defendants objected to the reception in evidence of the application forms on the ground of immateriality, and they also objected to all testimony which would explain or qualify these documents, as within the parol evidence rule. The trial court sustained the objections. It also sustained the objection to the admission of other exhibits on the same grounds. These other exhibits included the record of the hearing, the order of the commissioner of agriculture, and the checks paid by the plaintiff pursuant to the order. The court then granted the defendants' motion to dismiss and plaintiff appeals from an order denying its motion for a new trial.

During the trial a dispute also arose when the defendants asserted that the "APPLICATION FOR BOND" forms had been materially altered. The trial court did not rule on this issue.

An examination of the record indicates the following sequence of events prior to the issuance of the bond to the corporation. In

December 1953, when the produce corporation was being organized, defendant Tabor and Jacob Klempf (the manager of the produce corporation but not a party to this suit) contacted a local insurance agent in Bird Island, Mr. Ninow, for the purpose of obtaining a wholesale produce dealer's bond as required by statute. On December 18, 1953, Ninow, Tabor, and Klempf went to Minneapolis to the office of an insurance broker, named Mr. Traff, to consult him. Traff then contacted Mr. Smith, a bond representative for Cullen & Crowther which represents Anchor Casualty. Smith went to Traff's office and met Ninow, Tabor, and Klempf. Smith gave four printed "APPLICATION FOR BOND" forms to Ninow. These forms were taken back to Bird Island. Each of the four defendants partially completed and signed one form. About a week later, Ninow and Tabor took all four forms back to Minneapolis and gave them to Mr. Smith at his office. Smith examined the forms and transmitted them to Anchor Casualty. The bond was then issued to Bird Island Produce, Inc., by Anchor Casualty (i. e., handed to Ninow) the same day. Upon the filing of the bond with the commissioner of agriculture, the wholesale produce license was granted.

The conversation which took place at the time Smith first gave the application forms is disputed. Plaintiff claims that Smith explained to Tabor, Ninow, and Klempf that they were indemnity agreements which each officer and shareholder must individually sign as collateral before Anchor Casualty could execute the corporate bond since the produce corporation had no assets. The defendants deny this and assert that they signed as corporate officers.

Some entries were made after the forms were signed by the defendants. Each defendant did sign his own name (not the corporate name) at the top of each form in the blank entitled "Name of Principal." They also signed in the same manner at the bottom of each form, on the line entitled "(Principal)", beneath an indemnity agreement which requires the undersigned to indemnify Anchor Casualty for all liabilities incurred in consequence of the "above described bond." A second line beneath the indemnity agreement entitled "(Signature for Third Party Indemnitor)" was left blank.

The defendants testified that the financial information they entered on each application referred to individual assets of each defendant, not to corporate assets. The produce corporation had few, if any, assets at the time each defendant signed the applications.

On each form the word "INDEMNITOR" was typed in beneath the signature of each defendant by someone in the office of Anchor Casualty or its agent after the document was signed without the knowledge of the defendants. The Anchor Casualty admits the alteration but contends that this is not a material alteration. Other less crucial words were also added. Ninow admits that he probably added the words "(Bird Island Produce)" on Tabor's form after Tabor's signature, and also that he added "(Dixie Egg Co. at Jacksonville, Fla.)" on Edward Klempf's form. The words "See Dun & Brad.", and "Hector Security State" were added to Ginsburg's form. "Bird Island", and "Interest in Bird Island Co." were added to Tabor's application by someone other than the signer. Tabor claims that the amount and date of the bond were also added by someone else, as well as the date of the instrument.

It is conceded by both parties that the central issue upon which this appeal turns is the admissibility of plaintiff's exhibits G, H, and I as offered. These are writings upon which the plaintiff's cause of action rests. Whatever right it may have against the defendants must come from them. The complaint alleges that the Bird Island Produce, Inc., "duly made application, in writing, to plaintiff * * * to execute such bond required by the Statutes of the State of Minnesota";[1] that Anchor "refused to execute such bond unless and until each of the defendants * * * formally contracted and agreed in writing that they, * * * would save plaintiff harmless from any loss" which might arise by reason of default. It further alleges that "Thereupon the defendants * * * made, executed and delivered to plaintiff herein their several contracts of indemnity * * *." The asserted contracts of indemnity are represented by exhibits G, H, and I. The court sustained the objections of the

[1]An examination of the record and files does not disclose that a written application of the corporation as such was made a part of this case.

defendants to the admission of these writings on the ground that they were immaterial and not admissible under the parol evidence rule. Exhibits G, H, and I are identical save for amounts set forth in the statement of assets and liabilities and minor notations made on them.

An examination of these exhibits shows that they are forms prepared by the surety company. Printed on the forms are the words "APPLICATION FOR BOND" and in the upper lefthand corner are instructions as to the type of bond for which the application should be used. The writing sets forth the name of the principal, being the individual defendant in each case, his address, the amount of the bond, its term, and the name and address of the obligee. On the line indicated by the words "Title of Case," is the writing "In Connection With Bird Island Produce Inc."[2] After indicating the kind of business and the name and address of the attorney for the principal, the writing contains a statement of "APPLICANTS ASSETS AND LIABILITIES." Beneath this statement is a paragraph referring to an agreement to indemnify the Anchor Casualty Company for liabilities by reason of its having executed "the above described bond." Each application is signed by an individual defendant under the line indicated by the word "(Principal)". It is admitted that, after the applications had been signed and delivered, the surety company added the identification "INDEMNITOR" under the principal's signature.

The question is raised as to whether these exhibits should have been admitted, together with proffered proof of the circumstances of their preparation, execution, and acceptance, so as to establish them as agreements to indemnify the surety company for liability by reason of default in the bond issued for the Bird Island Produce, Inc. The plaintiff argues with reference to these exhibits: "The wording is so plain, simple and direct that additional language will tend only to confuse that which is already clear." The defendants assert that the exhibits cannot be material to the issues without resort to parol evidence which, if permitted, would change entirely

---

[2] In connection with this notation there appears to be a dispute as to when and by whom it was endorsed.

the character of the undertakings both as to the parties and subject matter. It becomes necessary to examine the proffered exhibits to determine their legal effect.

As we view exhibits G, H, and I, they are applications addressed to the Anchor Casualty Company by the named defendants as principals for a bond to the State of Minnesota as obligee. Each is signed by a named defendant as principal. While reference is made to Bird Island Produce, Inc., there is nothing contained in the writing which would indicate that the application for the bond is for anyone except the named principal in each instance. Nor would the fact that the individual defendant signed as principal over the line marked "(Principal)" and below the paragraph with reference to indemnification by reason of "the above described bond," indicate anything inconsistent with the express wording in the application for an individual bond. An indemnification clause in a form of application for a bond does not enlarge the liability of the principal-applicant. We have said: "when a contract of surety is made, an obligation is implied on the part of the principal that he will indemnify the surety for any payment the latter may make under the contract." Hartford Acc. & Ind. Co. v. Dahl, 202 Minn. 410, 413, 278 N. W. 591, 593.

The plaintiff here offered the exhibits to establish that a bond was applied for in behalf of the Bird Island Produce, Inc., and that the individual defendants executed and delivered separate agreements undertaking to indemnify the surety company for loss which might result from the issuance of such bond. It is clear that the exhibits on their face do not express such an agreement. In order to have the proffered exhibits utter the agreement for which the plaintiff contends it must necessarily resort to extrinsic evidence; for the character claimed for the writings is not borne out by the language used in them. To support the interpretation for which the plaintiff contends it would be necessary to construe these exhibits as separate applications of the individual defendants for a bond to be issued for a corporation as principal, coupled with a promise by the individual defendants to indemnify the surety company for any loss resulting from a bond issued to the corporation. This interpretation is

not consonant with the plain and unambiguous language of exhibits G, H, and I.

Mr. Justice Mitchell in Paine v. Smith, 33 Minn. 495, 499, 24 N. W. 305, 307, said:

"* * * The proposition is not to explain the terms used by the parties, or to annex a mere incident to the contract not inconsistent with what was expressed, but to make an entirely new contract by imposing on the party who has entered into one contract another and different obligation."

Where, as here, the effect of the proffered evidence would be to contradict the plain meaning of the language of the exhibit, or to engraft upon it a provision entirely outside of it, parol evidence for that purpose is not admissible. 20 Am. Jur., Evidence, § 1148; 32 C. J. S., Evidence, § 960. 22 C. J., Evidence, § 1571b, states as follows:

"The parol evidence which can be admitted to explain the contract must be such as tends to show the correct interpretation of the language used, and its only purpose is to enable the court or jury to understand what the language really means; evidence which has no tendency to aid in the construction of the writing or to explain any ambiguity therein cannot be received. It is therefore necessary that the line which separates evidence which aids the interpretation of what is in the instrument from direct evidence of intention independent of the instrument should be kept steadily in view, the duty of the court being to declare the meaning of what is written in the instrument, not of what was intended to be written."

Cargill Comm. Co. v. Swartwood, 159 Minn. 1, 198 N. W. 536; Samuel H. Chute Co. v. Latta, 123 Minn. 69, 142 N. W. 1048; Thompson v. Libby, 34 Minn. 374, 26 N. W. 1; The Dayton Co. v. Carpet, Linoleum, etc., Union, 229 Minn. 87, 96, 39 N. W. (2d) 183, 188; Village of Hibbing v. Township of Stuntz, 225 Minn. 31, 29 N. W. (2d) 808; Bergland Oil Co. Inc. v. Grommesh, 226 Minn. 19, 31 N. W. (2d) 644.

To be an operative valid undertaking, the application must concur with the issuance of the bond applied for. No bond was issued pur-

suant to the applications represented by exhibits G, H, and I, and, as a result, nothing happened to give these writings legal effect. The application on its face expressed an undertaking which, upon acceptance, might be enforced; but without resorting to extrinsic evidence, the application for an individual bond by and for the respective defendants cannot be construed to be an indemnity undertaking on a bond issued to a third party.

■ In determining the issue as to the admissibility of exhibits G, H, and I, as well as proffered evidence to support them, we are controlled by the decision of this court in Seifert v. Mutual Benefit Life Ins. Co. 203 Minn. 415, 281 N. W. 770, in which case the subject of the admissibility of parol evidence to modify a contract is discussed. In reversing the lower court for error in permitting the introduction of parol evidence to modify a written contract, it was said (203 Minn. 422, 281 N. W. 773): "The suit is not founded upon fraud, concealment, or mistake; nor do plaintiffs seek to set aside the grant; and nowhere in the pleadings or proof is there any intimation that they sought reformation of it." In that case we adopted the rule expressed in Pitcairn v. Philip Hiss Co. (3 Cir.) 125 F. 110, 113, as follows:

"According to the modern and better view, the rule which prohibits the modification of a written contract by parol is a rule, not of evidence, but of substantive law. [Citing authorities.] Parol proof is excluded, not because it is lacking in evidentiary value, but because the law for some substantive reason declares that what is sought to be proved by it (being outside the writing by which the parties have undertaken to be bound) shall not be shown. Where, by statute, a writing is required either to create an obligation or to effect a result, as in the case of deeds and wills, or of contracts within the statute of frauds, it is readily understood that it is the writing alone that is to speak; but this is equally true of contracts which by the convention of the parties have assumed a similar form. The writing is the contractual act, of which that which is extrinsic, whether resting in parol or in other writings, forms no part. If through fraud, accident, or mistake it fails to express the contract

as it was intended to be made, equity will reform it upon proper proof. But still it is the writing as corrected that is the measure of the parties' undertaking, and they cannot be otherwise held. There is much admitted confusion on this subject, due in part to the way in which in some jurisdictions the rule is administered; and the failure to recognize the true basis of it is all that creates any difficulty here."

■ It is well established that where contracts relating to the same transaction are put into several instruments they will be read together and each will be construed with reference to the other. 12 Am. Jur., Contracts, § 246; 17 C. J. S., Contracts, § 298; 4 Dunnell, Dig. (3 ed.) § 1831; Wm. Lindeke Land Co. v. Kalman, 190 Minn. 601, 252 N. W. 650, 93 A. L. R. 1393. On the theory that the writings, exhibits G, H, and I, were the inducing factor for the issuance of the bond to the corporation, it is urged that the applications, exhibits G, H, and I, and the bond, exhibit A, should be read together as constituting the transaction as a whole. However, the parties to these instruments are not the same, and the plain provisions of the applications and the bond are incompatible. Exhibits G, H, and I represent undertakings between individuals and the surety company as opposed to exhibit A, the bond, which represents an undertaking between the corporation and the surety company. Not only is there a variance between the parties, but under the plain wording of the instruments, without aid of extrinsic evidence, they cannot be interpreted as referring to the same transaction. Lunt v. Van Gorden, 224 Iowa 1323, 278 N. W. 631, quoting from 13 C. J., Contracts, § 487, p. 530; 17 C. J. S., Contracts, § 298; Positype Corp. v. Mahin (2 Cir.) 32 F. (2d) 202, 204; Barnett v. Lovejoy, 193 Iowa 678, 186 N. W. 1.

■ While the plaintiff insists that the wording of exhibits G, H, and I by their plain and unambiguous terms spells out an indemnity agreement, some reference should be made nevertheless to the clause contained in two of them which states "In Connection With Bird Island Produce, Inc." It is our view that evidence as to the meaning of that particular phrase may not be permitted to alter the meaning

of the plain language which creates the relationship of the parties. Wykoff v. Irvine, Stone & McCormick, 6 Minn. 344 (496). The proffered evidence would in effect destroy the undertaking plainly expressed in the exhibits and set up in place thereof an entirely different contract. The prohibition of the parol evidence rule is not against the use of extrinsic circumstances for the purpose of interpretation "but against making them the instruments of contradiction of an expressed contractual intent." Wilmot v. Minneapolis Auto. Trade Assn. 169 Minn. 140, 142, 210 N. W. 861.

■ The defendants in oral argument have contended that the plaintiff's cause of action must fail because the complaint did not ask that the writings be reformed so as to permit proof which would conform to the undertakings declared in the complaint. It is well recognized that parol evidence is admissible in suits to reform written instruments where by reason of mistake, fraud, or inequitable conduct the writing does not speak the true intent of the parties. 76 C. J. S., Reformation of Instruments, §§ 41, 63, 64, 83b; 16 Dunnell, Dig. (3 ed.) § 8339; Lundman v. United States F. & G. Co. 163 Minn. 303, 307, 204 N. W. 159, 160; First Nat. Bank v. Hendrickson, 61 Minn. 293, 295, 63 N. W. 725. In the Lundman case, we said that, if no recovery can be had on the undertaking as it reads, it is first necessary to secure reformation of it. Although there is a division of authorities as to whether it is first necessary to secure reformation of such instrument, this court indicated in Seifert v. Mutual Benefit Life Ins. Co. 203 Minn. 415, 281 N. W. 770, that where the action was not founded upon fraud, concealment, or mistake, and the record did not indicate that from the pleadings or proof reformation was sought, that parol evidence was not admissible.

This line of authorities may have lost some of its force by reason of Rule 54.03, Rules of Civil Procedure, which provides: "Except as to a party against whom a judgment is entered by default, every other judgment shall grant the relief to which the party in whose favor it is rendered is entitled." 3 Youngquist & Blacik, Minnesota Rules Practice, pp. 46, 47. But where it is apparent from the circumstances that fraud or mistake has occurred, such circumstances

should be stated with particularity in the pleadings as required by Rule 9.02. One of the primary purposes of the new rules of civil procedure is to enable the court to give judgment according to the facts stated and proved without reference to the form used or legal conclusions adopted by the pleader. 15 Dunnell, Dig. (3 ed.) § 7528a. Nevertheless, good practice requires that, once the litigation has passed the discovery and pretrial stage, the issues should be well defined so that the court may determine the area of inquiry to intelligently pass upon questions of evidence as they arise and prepare instructions for the jury.

Our view, as applied to the circumstances here, is that, where the instrument declared in the complaint may be one required to be in writing by the statute of frauds or where, as indicated here, because of mistake, it expressed an agreement contrary to the intent of the parties, the better practice is to ask for reformation and damages in the same suit. Ham v. Johnson, 51 Minn. 105, 52 N. W. 1080; Schreiner v. Ranweiler, 169 Minn. 92, 210 N. W. 628.

In view of the conclusion herein stated, it is unnecessary for us to pass upon the question of the alleged material alteration of exhibits G, H, and I, and the admissibility of other exhibits offered by the plaintiff.

Affirmed.